IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **LYCOMING ENGINES,** | § | |
| | § | |
| Appellants, | § | |
| | § | |
| v. | § | Civil Action No. **3:13-CV-1162-L** |
| | § | |
| **SUPERIOR AIR PARTS, INC.,** | § | |
| | § | |
| Appellee. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Appellant Lycoming Engines' appeal of the bankruptcy court's November 28, 2012 Memorandum Opinion and Order and December 14, 2012 Final Judgment. After consideration of all briefing by the parties, the record on appeal, and the applicable law, the court **affirms** the bankruptcy court's decision on all matters appealed as herein set forth.

### I.     Factual and Procedural Background

This appeal originates from a final judgment entered by the bankruptcy court in Adversary Proceeding No. 12-3035-BJH, which arose from a state court lawsuit filed by Lycoming Engines ("Lycoming"), a division of Avco Corporation ("Avco") and Avco's parent, Textron Industries ("Textron"), (collectively, "Appellants") and removed from the 236th Judicial District Court of Tarrant County, Texas as part of the reopened Chapter 11 bankruptcy *In re Superior Air Parts, Inc.*, Case No. 08-36705-BJH-11.

The factual and procedural history giving rise to this appeal is set forth in detail in the bankruptcy court's November 28, 2012 memorandum opinion.  The parties to the adversary proceeding have a long history of disputes that has resulted in two settlement agreements disposing

of federal lawsuits: a 1981 settlement and a 1999 settlement ("the 1999 agreements").  Pursuant to

the 1999 agreements, Appellee Superior Air Parts, Inc. ("Superior") obtained a license in certain

technical data, specifications, and blueprints for airplane engine parts in exchange for royalty

payments and Superior's agreement to keep Lycoming's information confidential and protect it from

disclosure.  The 1999 agreements also required Superior to indemnify Lycoming against any liability

resulting from any alleged defect in the design of the designated parts, to defend any suits against

Lycoming at Superior's expense, and to obtain insurance for the indemnification obligation.

Superior filed a voluntary petition for bankruptcy on December 31, 2008.  In its schedules,

Superior did not list Appellants as creditors or list the 1999 agreements as executory contracts.  As

a result, Superior took no action to assume or reject the agreements during its bankruptcy case.

Appellants did not file any proof of claim in the bankruptcy case, despite an appearance by their

counsel in the case.  A final decree was granted on September 23, 2010, and Superior's bankruptcy

case was closed.

On March 14, 2012, Superior moved to reopen its bankruptcy case in order to remove this

lawsuit, which was filed by Appellants in January 2012 in the 236th Judicial District Court of

Tarrant County, Texas.  The bankruptcy court granted the motion to reopen and denied Appellants'

remand motion, finding that it had jurisdiction over the claims pleaded in the state court action.  On

June 26, 2012, the bankruptcy court denied Appellants' request for equitable remand and granted

Superior's motion to dismiss without prejudice to filing an amended complaint curing pleading

deficiencies.  Appellants then filed Plaintiffs' Second Amended Original Complaint and Request for

Permanent Injunction ("Second Amended Complaint"), a 33-page pleading with an 88-page exhibit

listing parts manufactured by Superior.  The Complaint asserts claims for (1) misappropriation of

**Memorandum Opinion and Order – Page 2**

trade secrets; (2) a declaratory judgment that Superior has no license or other rights to Lycoming's confidential information as a result of any licensing agreement and is therefore prohibited from manufacturing, distributing, or selling items that incorporate any Lycoming trade secrets; (3) unfair competition; (4) breach of contract; (5) breach of fiduciary duty; and (6) conversion.  The pleading essentially argues that Superior failed to fulfill its indemnity-related obligations created by the 1999 agreements for two postpetition lawsuits, that the 1999 agreements were terminated because of the breach or discharged in bankruptcy, and that all subsequent use of the trade secrets and proprietary information constitutes misappropriation of trade secrets, unfair competition, breach of contract, breach of fiduciary duty, and conversion.  Appellants also urged that Superior manufactured certain parts, without authorization, by misusing trade secret and proprietary data resulting in postbankruptcy, independent, and material breaches of the 1999 agreements.

In the November 2012 memorandum opinion and order, the bankruptcy judge dismissed all claims of the Second Amended Complaint, finding that 1999 agreements were nonexecutory contracts and the licenses survived Superior's bankruptcy; that the indemnity obligation was discharged upon confirmation of the discharge plan; that Appellants are unable to recover on any tort claim for which the necessary factual predicate is Superior's failure to indemnify; that Appellants' attempt to terminate the 1999 agreements was improper; that any tort claims arising out of such attempted termination failed; and that any counts related to postconfirmation acts were insufficiently pleaded under *Iqbal* and *Twombly*.  The bankruptcy court refused to allow further amendment of Lycoming's Second Amended Complaint.

## II.      Legal Standard – Bankruptcy Appeals

In a bankruptcy appeal, district courts review bankruptcy court rulings and decisions under the same standards employed by federal courts of appeal: a bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law *de novo*.  *In re Dennis,* 330 F.3d 696, 701 (5th Cir. 2003); *In re National Gypsum Co.,* 208 F.3d 498, 504 (5th Cir. 2000).  A bankruptcy court's "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous."  Fed. R. Bankr. P. 8013.  A finding is clearly erroneous and reversible only if, based on the entire evidence, the reviewing court is left "with the definite and firm conviction that a mistake has been committed."  *In re Dennis,* 330 F.3d at 701 (citation omitted).  In conducting this review, the court must give due regard to the opportunity of the bankruptcy judge to determine the credibility of the witnesses.  *Id.*; *In re Young*, 995 F.2d 547, 548 (5th Cir. 1993) (quoting Fed. R. Bankr. P. 8013).  A bankruptcy judge's evidentiary rulings are reviewed for an abuse of discretion. *See In re Repine,* 536 F.3d 512, 518 (5th Cir. 2008).

## III.      Analysis

Appellants raise six issues on appeal, contending that the bankruptcy court: (1) lacked jurisdiction to dismiss the Second Amended Complaint; (2) improperly concluded that Superior's obligations under the 1999 agreement were discharged in bankruptcy; (3) erred in permitting Superior to keep the benefits of the agreements without performing its obligations under the agreements and FAA regulations; (4) mistakenly failed to consider the FAA regulations and court decisions interpreting those regulations; (5) improperly granted Superior's Rule 12(b)(6) motion for failure to state a claim; and (6) erred in denying Appellants an opportunity to further amend their claims.

A.      **Jurisdiction**

Appellants contend that the bankruptcy court lacked jurisdiction over this adversary proceeding because the actions upon which liability is based in the Second Amended Complaint occurred postbankruptcy.  Title 28 U.S.C. § 1452(a) provides for removal of bankruptcy cases where the federal court would have original jurisdiction under 28 U.S.C. § 1334(b).  Section 1334(b) provides this court with "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  Bankruptcy jurisdiction can therefore be divided into three categories: (1) "arising under" jurisdiction; (2) "arising in" jurisdiction; and (3) "related to" jurisdiction.  Federal jurisdiction, including bankruptcy jurisdiction pursuant to 28 U.S.C. § 1334, is determined at the time of removal.  *See, e.g., Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995) ("[A] complaint amended post-removal cannot divest a federal court of jurisdiction."); *see also Pullman Co. v. Jenkins,* 305 U.S. 534, 537 (1939) ("The second amended complaint should not have been considered in determining the right to remove, which in a case like the present one was to be determined according to the Appellants' pleading at the time of the petition for removal.").  A party cannot consent to federal subject matter jurisdiction when none exists or waive the lack of subject matter jurisdiction.  *See, e.g., Bridgmon v. Array Sys. Corp.,* 325 F.3d 572, 575 (5th Cir. 2003).

Denying Appellants' motion to remand, the bankruptcy court found that federal subject matter jurisdiction was conferred by the allegations in the original complaint that were core to the bankruptcy proceeding.  The bankruptcy court explained:

> I believe that the issues that are raised in the original complaint, which is the complaint against which I test jurisdiction given that it was the original complaint that was removed to this Court, that the bases alleged there for the plaintiff's ability to terminate the 1999 license agreement was the debtor's failure to abide by

obligations that they claim were discharged through confirmation of a Chapter 11 plan in the underlying bankruptcy case. Again, that implicates issues of property of the estate, the effect of the discharge in bankruptcy, all of which "arise under" the Bankruptcy Code and, therefore, this Court has core jurisdiction to decide those issues.

The argument, just to be clear, that this all arose post confirmation would go to the Fifth Circuit's decisions in *Craig Stores* and *U.S. Brass,* neither of which were cited by the movant. But that deals with post confirmation "related to" jurisdiction of the Court, which, at least at the moment, does not appear to be implicated here from this Court's perspective. And so the fact that the plaintiff – the plaintiffs are attempting to characterize these as all post confirmation claims is ineffective, one, because they aren't post confirmation claims, they all relate to pre-confirmation agreement, which the plaintiffs are attempting to enforce.

And, secondly, given that this Court does not believe that "related to" jurisdiction is the . . . jurisdictional basis for this Court's jurisdiction, rather it is "arising under" or "arising in," thereby making the claims core. We don't need to reach the issues raised in either *U.S. Brass* or the *Craig Stores* decisions.

Doc. 1-14 at 228-29.

The bankruptcy judge was correct to find subject matter jurisdiction over this adversary proceeding. After a bankruptcy case is closed, a bankruptcy estate no longer exists, and, therefore, the bankruptcy court generally will not have subject matter jurisdiction over postdischarge lawsuits. *In re Bass,* 171 F.3d 1016, 1022 (5th Cir. 1999). Federal courts, however, retain significant jurisdiction after a discharge order is issued and a case is closed over matters concerning the interpretation and enforcement of bankruptcy court orders and important substantive rights granted by the Bankruptcy Code – even if the claims would not affect the bankruptcy estate. *See Travelers Indem. Co. v. Bailey,* 557 U.S. 137, 151-52 (2009). Such matters fall within the court's "arising in" and "arising under" jurisdiction. *In re National Gypsum Co.,* 118 F.3d 1056, 1063 (5th Cir. 1997). It is well settled that courts must be able to enforce their own orders postdischarge to ensure that the rights and obligations provided by the Bankruptcy Code are honored. *See In re Craig's Stores of*

*Tex., Inc.,* 266 F.3d 388, 390 (5th Cir. 2001) (holding that bankruptcy courts retain subject matter jurisdiction over a discharged debtor with respect to "matters pertaining to the implementation of the plan"); *see also In re National Gypsum Co.,* 118 F.3d at 1063.

The bankruptcy court here found that the court has the authority to hear and finally determine what claims are nondischargeable in a bankruptcy case. Determining the scope of the debtor's discharge is a fundamental part of the bankruptcy process. *See In re Muhs,* Adv. No. 10-01008, 2011 WL 3421546, at *1 (Bankr. S.D. Tex. Aug. 2, 2011) (citing *Central Va. Cmty. Coll. v. Katz,* 546 U.S. 356, 363-64 (2006)). ("The Bankruptcy Code is a public scheme for restructuring debtor-creditor relations, necessarily including the 'exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts.'"). Congress clearly envisioned that bankruptcy courts would hear and determine all core proceedings, 28 U.S.C. § 157(b)(1), which include "determinations as to the dischargeability of particular debts." 28 U.S.C. § 157(b)(2)(I).

In the initial complaint that was removed to the bankruptcy court, Appellants raised claims involving preconfirmation acts by Superior and sought a declaratory judgment that Superior did not confirm, adopt, or assume the 1981 or 1999 agreements and therefore had no license or other rights to the trade secrets acquired through the settlement agreements. *See* Doc 11-7 at 53-56. The initial complaint asserted, in part:

> Defendant has been through a bankruptcy. During the bankruptcy and at the conclusion of the bankruptcy, Defendant did not confirm, adopt, or assume the 1981 or 1999 Agreements. Instead, the 1981 and/or 1999 Agreements have been rejected by Defendant. Further, Defendant has repudiated the 1981 Agreement and the 1999 Agreements, refused to perform under the agreements, and has rejected all

> obligations under the agreements.  Accordingly, Defendant has no rights to any trade secret or proprietary data acquired under either of those agreements; Defendant has no right to use or to continue to use any trade secret or proprietary data acquired under those agreements (or derivatives of such data), and Defendant has no licensee rights to Plaintiffs' trade secret or proprietary data.  Further, any PMAs obtained with such data cannot be used by Defendant in the production of aviation merchandise because Defendant has no[] right to use the data or information.

*Id.* at 55-56.  The relief requested in the original complaint requires the court to interpret and enforce prior orders of this court and determine the scope of the bankruptcy discharge.  Appellants do not contend otherwise; instead, they urge that the Second Amended Complaint is specifically pleaded so that the liability inducing acts sued upon are only postconfirmation acts.  *See* Doc. No. 4 at 16-17; Doc. No. 10 at 14.  That Appellants amended their pleadings in an attempt to divest the court of subject matter jurisdiction does not "deprive the bankruptcy court of jurisdiction[,]" *see* Doc. No. 10 at 14, as Appellants repeatedly argue.  *See, e.g., Cavallini*, 44 F.3d at 264.  Accordingly, the bankruptcy court had subject matter jurisdiction to consider the adversary proceeding and grant Superior's motion to dismiss.

### B.      Indemnity Obligation

In Appeal Points 2, 3, and 4, Appellants contend that the bankruptcy court erred in determining that Superior's indemnity obligation was discharged after confirmation of the bankruptcy plan and dismissing Lycoming's indemnity claims and related claims involving the lack of proper insurance.  Appellants state that "the bankruptcy court has effectively re-written the 1999 Agreement so that Lycoming has been deprived of the benefits of the 1999 Agreement, while Superior has obtained a better 1999 Agreement than it had prior to bankruptcy.  This is neither fair nor legal."  Doc. 4 at 20.  Such argument, which asserts that the bankruptcy court relieved Superior

from liability from all postconfirmation wrongdoing, misstates the meaning and effect of the bankruptcy court's ruling.

The bankruptcy court did not discharge Superior's liability for postconfirmation bad acts or provide a "continuing license to violate the law." Doc. 4 at 20-21. Instead, the bankruptcy judge found, as previously stipulated by Appellants, that the 1999 agreements were nonexecutory contracts – for which performance only remained due from Superior on the petition date – that could not be assumed or rejected in the bankruptcy. *See* Doc. 1-1 at 36-37. "Therefore, Superior remained bound by the 1999 Agreements, and was obligated to comply with the license post-petition and post-confirmation. Confirmation of the Plan only discharged Superior from any debt 'that arose before the date of such confirmation,' whether or not the Plaintiffs filed a proof of claim in Superior's bankruptcy case." *Id.* at 37. Appellants' claims related to failure to indemnify Lycoming with respect to postconfirmation lawsuits, however, "stand on a different footing than the other claims alleged in the First Amended Complaint[.]" *Id.* at 38. That is because a right to indemnification is a prepetition claim under the Bankruptcy Code where the indemnification agreement is executed prepetition, even if the facts giving rise to actual liability did not occur until after the discharge. *Id.* at 39-40.

This finding correctly states the majority rule, which holds that a right to indemnity under a prepetition contract is categorized as a prepetition claim under the Bankruptcy Code, even if the facts giving rise to liability did not occur until after discharge; that is, the relevant conduct is the *execution* of the indemnification agreement, not the alleged failure to indemnify. *See In re Manville Forest Prods. Corp.*, 209 F.3d 125, 129-30 (2d Cir. 2000); *see also Colonial Sur. Co. v. Weizman*, 564 F.3d 526, 529-30 (1st Cir. 2009); *In re Enron Corp.*, Nos. H-01-3624 & G-05-0012, 2008 WL

3509840, at *6 (S.D. Tex. July 25, 2008).  In the Fifth Circuit, a contingent tort claim based upon a prepetition relationship is deemed to be a debt that arose before the date of confirmation.  *See Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1277-78 (5th Cir. 1994).  The liability inducing conduct being sued for in this adversary proceeding – the failure to provide indemnity – is categorized as conduct that occurred prior to the bankruptcy discharge date.

The bankruptcy court was therefore correct to conclude that the indemnity related obligations, including those for failing to obtain insurance to cover the indemnity obligation, were discharged when the Appellants failed to pursue claims in Superior's bankruptcy.  That court was also correct to dismiss all claims predicated upon the factual assumption that Superior had materially breached the 1999 agreements by failing to indemnify Appellants and therefore had no authority under those agreements to use Appellants' trade secrets and other proprietary information to develop the parts.  To be clear, the bankruptcy discharge here relieved Superior's obligation for indemnity and insurance covering the indemnity that arose from a prepetition agreement because Appellants failed to file claims in Superior's bankruptcy case.  The bankruptcy court did not discharge Superior for postconfirmation bad acts.

Appellants also state in a short paragraph contained within these points of appeal that the bankruptcy court "erred by refusing to consider the Federal Aviation Administration's regulations and court decisions interpreting these regulations."  Doc. 4 at 25.  They do not, however, indicate how this alleged error is relevant to the issues raised on appeal.  There is no indication of the regulations and court opinions that should have been considered, or how those regulations would have prevented the indemnity and insurance claims from being discharged in Superior's bankruptcy.

### C.     Failure to State a Claim

The bankruptcy court granted Superior's Rule 12(b)(6) motion to dismiss Appellants' remaining claims that allege misappropriation of trade secrets, unfair competition, conversion, breach of contract, and breach of fiduciary duty related to the "At-Issue Parts" listed in the table attached to the Second Amended Complaint that are unrelated to the alleged termination of the 1999 agreements.  For these causes of action that were not barred by the confirmation of the bankruptcy plan, the bankruptcy judge found that Appellants' amended pleadings "once again fail[] to meet the pleading standard set forth in *Iqbal* and *Twombly*[.]" Doc. 1-1 at 41.

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle,* 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.,* 512 F.3d 177, 180 (5th Cir. 2007).  A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal citations omitted).  While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted).  The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (quotation marks, citations, and footnote omitted).  When the allegations of the pleading do not allow the court to infer

more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal,* 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint and not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.,* 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter,* 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips,* 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not

**Memorandum Opinion and Order – Page 12**

evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.,* 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.,* 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds,* 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Mann*, 556 F.2d at 293.

## 1.    Misappropriation of Trade Secrets

In the Second Amended Complaint, Lycoming alleges "upon information and belief" that (1) Superior has used and continues to use Appellants' trade secrets and other proprietary information to develop the designs and manufacturing processes for the At-Issue Parts; (2) has embarked on a plan to improperly obtain and use Appellants' trade secrets and proprietary information; (3) has used and continues to use Appellants' trade secrets and other proprietary information to obtain governmental approvals; and (4) plans to use the trade secrets and proprietary information by manufacturing engine parts and components to compete with Lycoming's parts. Doc. 1-5 at 139. Appellants include no further allegations of fact to support this cause of action. *Id.* at 136-140. The bankruptcy court found that Appellants failed to allege sufficient facts supporting their claim that Superior obtained the alleged trade secrets by improper means because

> The Plaintiffs do not provide any description of the "plan" Superior allegedly embarked upon, how or why the "plan" was improper, how Superior formulated and carried out the "plan," or when the "plan" was carried out. Although the Live

**Memorandum Opinion and Order – Page 13**

Complaint attaches an exhibit that lists approximately 1,800 part numbers, there are no allegations linking any particular conduct to any particular part number or PMA.

Doc. 1-1 at 42.  Lycoming contends that it satisfied the pleading standards of Rule 12(b)(6) because it

plead[ed] that its "drawings, process, specifications, procurement specification and other technical knowhow" represented trade secret[s] because of the "millions of dollars" and "tens of thousands of engineering hours" required to develop the information and obtain Federal Aviation Administration approval of these materials. Lycoming plead[ed] that its trade-secret data is not well-known outside of Lycoming's business, that Lycoming takes septs to protect this information, and the ability to use this data give Lycoming a competitive edge in the aviation industry, which is exemplified by the two licensing agreements signed by Superior.  Further, Lycoming plead[ed] that this type of information is recognized in the aviation industry as being trade secret to the "originator of the information."  Lycoming alleged that Superior was using Lycoming's trade-secret data post-confirmation to built parts and sell them.

Doc. 4 at 32-33.

The conduct alleged in the Second Amended Complaint fails to state a claim for misappropriation of trade secrets.  There is no description of the actual conduct giving rise to the cause of action apart from a recitation of the elements of the offense.  That is, Appellants fail to allege facts regarding *how* Superior improperly obtained and used their trade secrets to develop the designs and manufacturing processes, or *what* trade secrets, designs and processes were unlawfully used, and, as the bankruptcy court explained, submit no allegations linking any particular conduct to any particular part number or PMA (Parts Manufacturing Approval).  The resulting cause of action is a formulaic recitation of the elements of misappropriation of trade secrets containing only labels and legal conclusions.  These conclusory statements are not entitled to the presumption of truth and do not satisfy the pleading standards of *Twombly*.

## 2.      Unfair Competition

Appellants contend that Superior engaged in unfair competition under Texas law by using unidentified trade secrets and proprietary information in order to directly compete with Lycoming. They allege that "Plaintiffs created [the] trade-secret and proprietary information and data through extensive time, labor, skill, and money; Defendant's use of trade-secret and proprietary information and data as previously detailed gave Defendant a special advantage; and Defendant's use of the trade-secret and proprietary information and data post-bankruptcy confirmation caused commercial damage to Plaintiffs." Doc. 1-5 at 142.  The bankruptcy court dismissed this claim, since unfair competition is not an independent tort under Texas law and this count relies upon the trade secret misappropriation claim that is insufficiently pleaded under *Iqbal* and *Twombly*.  Doc. 1-1 at 45-46.

Although Appellants indicate that they properly alleged the elements for unfair competition by misappropriation, *see* Doc. 4 at 33-34, they again fail to set forth any facts to support these legal conclusions.  The table attached to the Second Amended Complaint, which contains a list of approximately 1,800 parts, does not sufficiently inform Superior "what data rights were at issue," "what types of tortious activities were committed," "when (if known) the tortious activities were committed, and how Superior came into possession of the trade-secret data."  Doc. 4 at 34-35. Instead, this cause of action again fails to include any allegations of fact to support liability.  It was properly dismissed by the bankruptcy court.

## 3.      Conversion

Appellants allege that Superior "has wrongfully and without authorization converted certain of Appellants' proprietary and trade secret data related to the At-Issue Parts to their own use post-bankruptcy, by incorporating data into their own materials and by assuming exercise of dominion

and control over the original data of Plaintiffs, to the exclusion of, and inconsistent with the superior right of Plaintiffs." Doc. 1-5 at 149. The bankruptcy court held that this count, too, "fails to allege *any* factual support for its conclusory allegations that Superior has converted the Plaintiffs' data to its own use." Doc. 1-1 at 46-47 (emphasis in original).

Appellants again fail to state a claim for relief under the standards set forth by *Iqbal* and *Twombly*. They do not submit any factual support for their legal conclusions or otherwise suggest what the trade secret data is, how Superior put that data to its own use by incorporating it into Superior's materials, when the conduct occurred, which part numbers were affected, or what materials of Superior incorporated the Appellants' trade secret data. The bankruptcy court was correct to dismiss this claim under Rule 12(b)(6).

### 4.    Breach of Fiduciary Duty

Appellants' claim for breach of fiduciary duty is also inadequately pleaded under *Iqbal* and *Twombly*. Appellants allege that Superior breached a fiduciary duty to protect the confidentiality of trade secrets and other proprietary information and not to use the secrets and information in a way that is contrary to the interests of Appellants. *See* Doc. 1-5 at 143. They urge that Superior improperly and unfairly used this information to obtain illicitly the data related to the At-Issue Parts, failed to maintain adequate protections for the data, wrongfully used the data to manufacture and sell PMAs, and neglected to return data, advise the FAA, or disclose to Appellants the possession and use of the unspecified data. *See id.* at 145.

The bankruptcy court found that these claims were insufficiently pleaded. It held that

> there are no factual allegations with respect to how Superior obtained the data, when
> it obtained the data, what data it obtained, or how Superior's conduct violated
> contractual, moral, industry or legal standards. The other allegations underlying this

claim are equally conclusory . . . There are absolutely no specific, non-conclusory
factual allegations supporting this claim.  Moreover, several of the alleged breaches
of fiduciary duty rely for their factual predicate on the Plaintiffs' termination of the
1999 Agreements, which termination was in turn premised upon Superior's failure
to indemnify the Plaintiffs post-confirmation.  For the reasons noted earlier, the
Court concludes that the Plaintiffs are unable to assert that claim as it is barred by
Superior's bankruptcy discharge.

Doc. 1-1 at 47-48.

The bankruptcy court's decision is correct.  Appellants' claims related to breach of fiduciary

duty are entirely conclusory and are not supported by factual allegations.  The resulting cause of

action does not satisfy the pleading standards of *Iqbal* and *Twombly*.

### 5.    Breach of Contract

Appellants' breach of contract claims contain nothing but conclusory statements that are not

entitled to the presumption of truth.  In the Second Amended Complaint, Lycoming pleaded that

Superior misused unlicensed trade secret data, transported trade secret data for use in foreign

countries, and continued to use and obtain unlicensed data.  *See* Doc. 1-5 at 143.  The bankruptcy

court found that "there are no specific, non-conclusory factual allegations supporting this claim[,]"

and that many of the breaches related to the purported termination of the 1999 agreements which

is without merit.  Doc. 1-1 at 49.

Appellants again urge that they have stated a claim for breach of contract because they set

forth a recitation of all of the legal elements of such cause of action.  *See* Doc. 4 at 35-37.  A review

of the conclusory statements contained within the Second Amended Complaint, however, confirms

that no specific factual allegations support a claim for breach of contract.  These unwarranted

deductions, labels, and conclusory statements "will not do" to satisfy the pleading standards of Rule

12(b)(6).  *Twombly*, 550 U.S. at 545.

With respect to all purported claims of Appellants, the allegations are too conclusory and speculative for this court to draw the reasonable inference that Superior is liable for the conduct alleged regarding any purported claim.  For this reason, Appellants fail to state a claim upon which relief can be granted with respect to the five claims.

### D.      Request to Amend

Appellants urge that the bankruptcy court erred by "failing to specify what was improper about the specific allegations" and denying them an opportunity to further amend their claims.  Doc. 4 at 40.  This contention misstates the procedural history of this case and is without merit.  The bankruptcy judge conducted two hearings on Superior's first motion to dismiss the First Amended Complaint.  During the first hearing, she granted Appellants' request to submit additional briefing and offered leave of court to amend to satisfy the *Iqbal* and *Twombly* standards.  At the second hearing, the bankruptcy judge granted leave to amend the complaint one more time in an attempt to cure defects that were set forth at both hearings.  *See In re Superior Air Parts, Inc.*, Adv. No. 12-03035-BJH, Doc. 46 at 14.  She indicated that Appellants would not be granted another opportunity to amend and explained as follows:

> But I will allow an attempt to replead.  But from my perspective, this will be the last time.  So, either get it right this time – you've re-pled once after the lawsuit was removed, and you did that of right.  You had the right under the rules, once the motion to dismiss was filed, to replead, and you took that opportunity.  So, this will be the second amended complaint.  So, from my perspective, this is it.

*Id.*  Appellants then filed the Second Amended Complaint.

Appellants have therefore submitted three complaints in this proceeding.  Their operative pleading, the Second Amended Complaint, was filed after the bankruptcy judge specifically

identified the pleading deficiencies resulting in dismissal of the First Amended Complaint without prejudice.

The provision of Rule 15(a)(2) of the Federal Rules of Civil Procedure that states "[t]he court should freely give leave when justice so requires" is not without limitation.  The decision to allow amendment of a party's pleadings is within the sound discretion of the presiding judge.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted).  In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

Appellants have had several opportunities to plead their best case.  Consequently, the court is of the view that Appellants have presented their best case, and that granting further leave to amend would have been futile.  *See Brown v. DFS Servs., L.L.C.*, 434 F. App'x 347, 352 (5th Cir. 2011) ("[I]t is not reversible error 'in any case where the pleadings, when viewed under the individual circumstances of the case, demonstrate that the plaintiff has pleaded his *best* case.'") (emphasis in original); *see also Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 321 (5th Cir. 1991).  "The law does not require a useless act and a court does not abuse its discretion when it denies a motion for leave to amend that would be futile." *Jones v. Nueces Cnty., Tex.*, No. C-12-145, 2012 WL 3528049, at *5 (S.D. Tex. Aug. 15, 2012).  Moreover, the court determines that

further amendment would have resulted in undue or unnecessary delay, as Appellants previously had several opportunities to set forth allegations to state claims upon which relief could be granted.

## IV.     Conclusion

For the reasons herein stated, the court **affirms** the bankruptcy court's November 28, 2012 Memorandum Opinion and Order and its December 14, 2012 Final Judgment, and **dismisses** this appeal. The clerk of court is directed to prepare, sign, and enter judgment in accordance with this Memorandum Opinion and Order pursuant to Rule 8016(a) of the Federal Rules of Bankruptcy Procedure.

**It is so ordered** this 15th day of May, 2014.

Sam A. Lindsay
United States District Judge